People v Caselnova (2025 NY Slip Op 06560)

People v Caselnova

2025 NY Slip Op 06560

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CR-24-0355
[*1]The People of the State of New York, Appellant,
v
Vito E. Caselnova, Respondent.

Calendar Date:October 15, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Matthew C. Hug, Special Prosecutor, Albany, for appellant.
Danielle Neroni Reilly, Albany, for respondent.

McShan, J.
Appeal from an order of the County Court of Saratoga County (James Murphy III, J.), entered September 21, 2023, which granted defendant's motion to dismiss the indictment.
In the early morning hours of November 20, 2022, defendant was with his then-girlfriend in the downtown area of the City of Saratoga Springs, Saratoga County. While awaiting a ride home, the two engaged in a verbal interaction with Alex Colon and a group of individuals with Colon. The altercation quickly turned violent as several members of the group punched defendant and forced him down onto the hood of a nearby rideshare vehicle. The encounter escalated further when defendant and Colon — both of whom were carrying licensed firearms — exchanged gunfire. Ultimately, defendant, the girlfriend and Colon sustained gunshot wounds from their exchange and the ensuing response from police. A grand jury was subsequently empaneled, heard testimony and evidence and, as a result, defendant was charged by indictment with attempted murder in the second degree, assault in the first degree, menacing in the second degree, reckless endangerment in the second degree, possession of a firearm in a sensitive location, two counts of possession of a large capacity ammunition feeding device and harassment in the second degree.
Thereafter, County Court informed the parties that it had received an anonymous letter from a grand juror who alleged various concerns with the grand jury proceeding. That precipitated the court commencing a sua sponte investigation of the allegations that eventually led to the court ordering disclosure of the grand jury minutes to defendant. Defendant then moved to dismiss the indictment pursuant to CPL 210.35 (5) on the basis that, among other things, the integrity of the proceeding was impaired by the People's failure to properly instruct the grand jury and in their presentation of the case, which showed substantial bias against defendant. County Court subsequently granted defendant's motion, dismissing the indictment against defendant without prejudice with leave to re-present the case to a different grand jury. On the purported instructional defects, the court found, among other things, that the proceeding was defective based on several incomplete or misleading instructions which were necessary in order to determine whether or not defendant was justified in his actions. County Court also determined that several non-instructional errors supported dismissal. The People appeal (see CPL 450.20 [1]).
We affirm based solely upon our agreement with County Court that the People failed to provide the necessary instructions with respect to justification. "A grand jury need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law. Rather, it is sufficient that the grand jury be provided with enough information for it to intelligently decide whether a crime has been committed and whether legally sufficient evidence exists to establish [*2]the material elements of that crime" (People v Waddell, 78 AD3d 1325, 1326 [3d Dept 2010] [internal quotation marks, brackets and citations omitted], lv denied 16 NY3d 837 [2011]). However, "while there is no requirement that the grand jury be charged with every potential defense suggested by the evidence, the People must charge those defenses that the evidence will reasonably support" (People v Gallo, 135 AD3d 982, 984 [3d Dept 2016] [internal quotation marks, ellipsis and citations omitted]). To that, "[w]here the evidence suggests that a complete defense such as justification may be present, the prosecutor must also charge the grand jurors on that defense, providing enough information to enable them to determine whether the defense, in light of the evidence, should preclude the criminal prosecution" (People v Waddell, 78 AD3d at 1326 [internal quotation marks, brackets and citation omitted]; accord People v Calafell, 211 AD3d 1114, 1118 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]).
At the outset, we disagree with County Court's determination that the People were required to instruct the grand jury on withdrawal with respect to the initial aggressor rule. "[E]ven if someone is the initial aggressor with respect to mere physical force, another person may be the initial aggressor with respect to deadly physical force. If mere physical force is employed against a defendant, and the defendant responds by employing deadly physical force, the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force" (People v Brown, 33 NY3d 316, 321 [2019] [internal quotation marks and citation omitted]). In making that determination, "both the sequence of the attacks (or imminently threatened attacks) and the nature of those attacks matter: which attacks were 'physical force' and which attacks were 'deadly physical force?' " (id. at 321-322). Further, that assessment must appreciate that a "defendant, in using deadly physical force, [is] not required to wait until he [or she] was struck or wounded if he [or she] reasonably believed that deadly force was about to be used against him [or her]" (People v Valentin, 29 NY3d 57, 62 [2017]). That does not require that a defendant's "belief as to the intention of another person to inflict serious injury be correct in order for the use of deadly force to be justified, but [it has] uniformly required that the belief comport with an objective notion of reasonableness" (People v Goetz, 68 NY2d 96, 107 [1986]; accord People v Valentin, 29 NY3d at 62).
Here, County Court correctly determined that, although defendant initially had his hand on his firearm as Colon's group first approached, and was therefore the first person to threaten the use of deadly force, defendant then took his hand off his weapon as he moved in between the girlfriend and Colon, extended his left hand to Colon's chest and used his right hand to usher the girlfriend behind him. At that point, the physical [*3]nature of the altercation was defined by punches, as Colon first attempted to strike defendant before stumbling over the curb and giving way to the attack from the rest of the group. When defendant took his hand off his gun and extended his hand, that could be interpreted as an attempt to withdraw from the encounter (see Penal Law § 35.15 [1] [b]; People v Petty, 7 NY3d 277, 285 n 4 [2006]; compare People v Brown, 33 NY3d at 323). However, defendant again reached for his gun while he was being punched on the hood of the rideshare vehicle and ultimately brandished his weapon after the vehicle reversed away from the melee. Resolution as to who was the initial aggressor at that point fell within the province of the grand jury, as the evidence elicited before the grand jury, viewed in the light most favorable to defendant, could reasonably establish that defendant simultaneously became aware that someone among Colon's group possessed a gun while members of the group utilized physical force against defendant as they beat him against the hood of the rideshare vehicle (see People v Valentin, 29 NY3d at 62; People v Petty, 7 NY3d 277, 285 [2006]; People v Swanton, 216 AD3d 1441, 1443 [4th Dept 2023]; People v Singh, 197 AD3d 1332, 1335 [2d Dept 2021]; compare People v Ritchie, 239 AD3d 1262, 1263 [4th Dept 2025], lv denied 44 NY3d 994 [2025]; People v Anonymous, 238 AD3d 612, 613 [1st Dept 2025], lv denied ___ NY3d ___ [Oct. 28, 2025]; People v Irizarry, 200 AD3d 428 [1st Dept 2021], lv denied 37 NY3d 1161 [2022]). If defendant was determined to be the initial aggressor at that point, there would have to be a subsequent withdrawal, which did not occur. Accordingly, as there is no reasonable view of the evidence that defendant attempted to withdraw at any point once he threatened deadly force by brandishing his weapon, the need for the withdrawal charge is negated (see People v Brown, 33 NY3d at 323).
Nevertheless, the foregoing sequence of events and issue of fact with respect to the initial aggressor determination dovetails with our conclusion that the People failed to instruct the grand jury that defendant's use of deadly force in defense of himself extended beyond Colon and to the entire group with respect to the attempted murder and assault charges (see Penal Law § 35.15 [2] [a]).[FN1] "[A] jury is not limited to consideration of the victim's actions at the time of the incident and should be instructed to consider, if presented, evidence of prior acts committed by the victim of which defendant had knowledge, the physical characteristics of all persons involved and the behavior of third-party aggressors acting in concert with the victim" (People v Young, 33 AD3d 1120, 1123 [3d Dept 2006], lv denied 8 NY3d 929 [2007]; see People v Wesley, 76 NY2d 555, 559 [1990]; see also People v Goetz, 68 NY2d at 114). With no indication of who possessed the gun amongst the group, and considering that he was being assailed from multiple directions, defendant could have reasonably [*4]believed that deadly force was necessary to protect himself against the entire group and the charge to the grand jury should have reflected that scenario (see Matter of Y.K., 87 NY2d 430, 434 [1996]; People v Young, 33 AD3d at 1123; see also People v Singh, 197 AD3d at 1336; compare People v Johnson, 136 AD3d 1417, 1418 [4th Dept 2016], lv denied 27 NY3d 1134 [2016]).
Further, the sequence of events that occurred after defendant brandished his firearm reflects that there was no reasonable view of the evidence that defendant had a duty to retreat before employing deadly force, assuming he was not the initial aggressor (see People v Mercer, 221 AD3d 1259, 1261 [3d Dept 2023], lv denied 41 NY3d 1003 [2024]; People v DeCamp, 211 AD3d 1121, 1122 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]). As noted by County Court, defendant was backing onto Broadway while being approached by the group, and the video footage reflects several vehicles travelling on the four-lane road. After defendant was punched several times by two members of the group, the attack was briefly interrupted by the rideshare vehicle backing up. At that point, defendant regained his balance and raised his firearm, at which point he was almost immediately attacked from his left side by the driver of a white SUV that had pulled up at the onset of the physical altercation. Defendant then circled around to the sidewalk with his gun drawn and, approximately seven seconds later, discharged his firearm after Colon raised his firearm.[FN2] Accounting for the girlfriend's warnings that someone in Colon's group possessed a gun and her proximity to the melee, these circumstances fairly establish that defendant could not safely retreat with complete safety to himself and others (see Matter of Y.K., 87 NY2d at 434; People v Black, 33 AD3d 338, 341 [1st Dept 2006]; compare People v Cutting, 206 AD3d 1281, 1281-1282 [3d Dept 2022]).
Finally, the People also contend that County Court erred in determining that the evidence supported a justification defense for the use of deadly force based upon a reasonable belief that another person was "committing or attempting to commit a kidnapping, forcible rape, forcible criminal sexual act or robbery" (Penal Law § 35.15 [2] [former (b)][FN3]; see People v Thomas, 166 AD3d 1499, 1503 [4th Dept 2018], lv denied 32 NY3d 1178 [2019]). "A justification charge is appropriate where, viewing the evidence in the light most favorable to the defendant, a jury, based upon any reasonable view of the evidence, could decide that the defendant's actions were justified" (People v Reinfurt, 241 AD3d 1015, 1024 [3d Dept 2025] [internal quotation marks and citations omitted]; see People v Padgett, 60 NY2d 142, 144-145 [1983]). The video evidence elicited from the dashboard camera of the rideshare vehicle and City cameras depicts the white SUV hastily arriving while two members of the group were attacking defendant on the hood of a rideshare vehicle that had parked just before the altercation [*5]began. Both defendant and the girlfriend testified to overhearing someone shout "run his pockets and grab the girl." Immediately before that, Colon had attempted to punch defendant, when he stumbled on the curb and dropped his firearm. The girlfriend observed the firearm and shouted to defendant that there was a gun. The rideshare vehicle that was parked and was host to the physical attack abruptly backed up, allowing defendant to gain his balance, withdraw his firearm and scan the scene. By defendant's account, he then quickly circled back onto the sidewalk so that he could get in between the group and the girlfriend. Seconds later, Colon raised his firearm and he and defendant began shooting. Approximately 15 seconds elapsed from the first blow to the first gunshot. That sequence of events considered alongside the relevant testimony regarding the purported statements to "grab the girl," when viewed in the light most favorable to defendant, sufficiently supports a justification defense based upon a reasonable belief that a kidnapping was taking place in the seconds after the violence began, thus warranting a justification charge to that effect (see Penal Law § 35.15 [2] [former (b)]).[FN4] The People's focus on the credibility of defendant's account is misplaced, as the need for the charge is based upon a view of the evidence in the light most favorable to defendant, permitting the grand jurors to resolve any underlying credibility issues (see People v Batashure, 75 NY2d 306, 310-311 [1990]; see also People v Huston, 88 NY2d 400, 410 [1996]).
Collectively, we find that the failure to provide the foregoing justification charges impaired the integrity of the proceeding and prejudiced defendant, thus supporting dismissal of the indictment (see CPL 210.35 [5]; see e.g. People v Ball, 175 AD3d 987, 989 [4th Dept 2019], affd 35 NY3d 1009 [2020]). In light of our determination, the People's remaining contentions concerning County Court's findings of bias in the proceedings are rendered academic.
Pritzker, J.P., Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.
ORDERED that the order is affirmed.

Footnotes

Footnote 1: The People, in providing justification instructions for count 3 charging defendant with menacing, utilized "Colon and others" to contextualize the necessary showing with respect to defendant's belief.

Footnote 2: There is conflicting testimony as to who discharged their weapon first.
Footnote 3: In 2024, the Legislature amended Penal Law § 35.15 (2) (b) to reflect that this section also applies in cases of "forcible aggravated sexual abuse" (L 2024, ch 23, § 4; L 2023, ch 777, § 8).

Footnote 4: We note that the People did charge justification with respect to defendant's purported belief that a robbery was occurring (see Penal Law § 35.15 [2] [former (b)]).